UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOSE ENRIQUE CERON DIAZ, *on his own and on behalf of others similarly situated*,

                              Plaintiffs,

       -against-

WANRONG TRADING CORP., *et al.*,

                             Defendants.
                                                      x
------------------------------------------------------------------------

**MEMORANDUM & ORDER**

25-CV-1575
(Merchant, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Jose Enrique Ceron Diaz, on his own and on behalf of others similarly situated, commenced this action on January 14, 2025 against Defendants Wanrong Trading Corp. ("Wanrong"); Tai He Trading Corp. ("Tai He"); Wan Chang Inc f/d/b/a C.M.J. Xing Inc; Yiang Shao a/k/a Yi Ang Shao; Xuming Ren a/k/a Xu Ming Ren; Xumao Ren a/k/a Xu Mao Ren; Taotao Ren a/k/a Tao Tao Ren, (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law ("NYLL") §§ 190-199A, 650-665. *See generally* Dkt. Nos. 1-1 and 5. Defendants removed this action to federal court, pursuant to 28 U.S.C. §§ 1441 and 1446 on March 21, 2025. *See* Dkt. No. 1 at 1.[1]

Currently pending before this Court is Defendants' motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), and stay the action pending arbitration.[2] *See* Dkt. No. 21.

---

[1] Page citations are to ECF-stamped pages unless otherwise noted.

[2] A motion to compel arbitration is non-dispositive, and reviewable on appeal to the District Court for clear error. *Chung v. Royal Care, Inc.*, No. 23-CV-7962 (OEM) (LKE), 2025 WL 809900, at *1 (E.D.N.Y. Mar. 14, 2025). Indeed, "[d]istrict courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate

1

For the reasons set forth below, the motion to compel is granted and the matter is stayed.[3]

## I. Background

"A court deciding a motion to compel arbitration 'considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the nonmoving party.'" *Daitz v. ATR New York LH, Inc.*, No. 25-CV-01591 (JMA) (LGD), 2025 WL 2733346, at *1 (E.D.N.Y. Sept. 25, 2025) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up)); *see Rahman v. Papa John's International, Inc.*, 22-CV-5644 (AMD) (TAM), 2024 WL 1308589, at *1 n.1 (E.D.N.Y. March 26, 2024); *Castellanos v. Raymours Furniture Company, Inc.*, 291 F. Supp. 3d 294, 296 n.1 (E.D.N.Y. 2018); *Faggiano v. CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 34 n.1 (E.D.N.Y. 2017); *Guida v. Home Savings of America, Inc.*, 739 F. Supp. 2d 611, 612 n. 2 (E.D.N.Y. 2011) (citing *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration.") (internal citation omitted)).

---

Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *Mera v. SA Hosp. Grp., LLC*, 675 F. Supp. 3d 442, 445 (S.D.N.Y. 2023); *Puig v. City of New York*, 733 F. Supp. 3d 218, 219 n.1 (S.D.N.Y. 2024); *Davis v. Crothall Healthcare, Inc.*, No. 22-CV-07196 (PGG) (SDA), 2023 WL 6519603, at *3 (S.D.N.Y. July 7, 2023); *GateGuard, Inc. v. Goldenberg*, 585 F. Supp. 3d 391, 394 n.2 (S.D.N.Y. 2022); *Anderjaska v. Bank of America, N.A.*, 523 F. Supp. 3d 456, 459 n.2 (S.D.N.Y. 2021); *Ahmad v. Day*, 556 F. Supp. 3d 214, 215 n.2 (S.D.N.Y. 2021).

[3] Alexa M. Marsh, a judicial intern who is a third-year law student at The George Washington University Law School, is gratefully acknowledged for her assistance in the research of this Memorandum & Order.

2

A.   Facts

i.   Allegations in the Complaint

According to the Complaint, Defendants employed Plaintiff from on or about November 30, 2021 through the present day. *See* Dkt. No. 5 ¶ 13. Plaintiff's primary duties included preparing and delivering "orders of meat (beef, pork, chicken, and duck) in Defendants' Order Preparation and Delivery Department." *Id.*

Plaintiff alleges that he regularly worked more than forty hours per week, generally between fifty and sixty hours per week and was paid "at or around" New York minimum wage at rates ranging from $15 per hour to $16.50 per hour. *Id.* ¶¶ 75-79. From the commencement of his employment until March 2025, Plaintiff claims that he was paid in cash every week. *Id.* ¶ 80. Beginning March 2025, however, Defendants purportedly began to pay Plaintiff by check. *Id.* ¶ 81. Plaintiff alleges that throughout his employment with Defendants, he had an "automatic deduction of half an hour a day for lunch that was not taken for six days a week, or three hours each workweek." *Id.* ¶ 82. Plaintiff and his coworkers allegedly never received their full thirty-minute lunch break but were forced to sign off as having taken the full thirty-minute break. *Id.* ¶¶ 83-84.

Plaintiff filed an action in New York State Supreme Court, Queens County, on behalf of himself and his coworkers alleging race, national origin, sex, and gender discrimination against Wan Chang Inc. on November 19, 2023. *See* Dkt. No. 5 ¶ 85 (citing *Brinez v. Wan Chang Inc.*, Index No. 724543/2023 (Queens County Supreme) ("*Brinez*")).[4] Upon commencement of the *Brinez* case, Plaintiff alleges that Defendants "doubled down" on their refusal of Plaintiff's lunch time. *Id.* ¶ 86.

---

[4] Plaintiff here is one of the named plaintiffs in *Brinez*. Dkt. No. 20-1.

3

Plaintiff brings the instant action individually and as a representative on behalf of all other current and former workers, including but not limited to employees preparing and delivering meat, who have been or were employed by Defendants for up to the last three years and were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty hours per week. *Id.* ¶ 91.

### ii.     Plaintiff's Employment Agreement

Defendants prepared an "Agreement Regarding the Fact-Finding and Issue Resolution (FAIR) Program and Arbitration" (the "FAIR Agreement") in 2018 to resolve any future issues that may arise with their employees. Dkt. No. 21-3 at 2. Defendants had the FAIR Agreement translated into both Spanish and Chinese versions to accommodate their employees who did not speak English. *Id.* All new employees "were required to review and execute a FAIR Agreement at or around the time of their hire." *Id.* at 3. Signed FAIR Agreements were then filed into each employee's personnel file, maintained by Defendants. *Id.* The FAIR Agreement states, in pertinent parts, that:

> By signing this agreement, You agree that all "Claims" (as defined in paragraph 3) between "You" and the "Company" (as defined below in Paragraph 3 [Wanrong Trading Corp. and its affiliate, Tai He Trading Corp]) shall be resolved exclusively by the internal dispute resolution procedures and the binding arbitration procedures described in this document.

Dkt. No. 12-2 at ¶ 2; *see also* Dkt. No. 21-3 at 6; Dkt. No. 21-2 at 6 (in Spanish). The FAIR Agreement at paragraph 3 provides that:

> "*Claim*" includes any claim, dispute, allegation, controversy, or action between You and the Company that in any way arises from, or relates to, Your employment with the Company or the termination of Your employment with the Company. A Claim encompasses, for example, any employment, labor, wage-and-hour, overtime, and compensation claims, including, without limitation, any Claim that may arise under the following laws [which include] the Fair Labor Standards Act of 1938 or any state wage and hour laws, such as the New York Labor Law[.]

4

Dkt. No. 12-2 at ¶ 3; *see also* Dkt. No. 21-3 at 7; Dkt. No. 21-2 at 7 (in Spanish). The FAIR Agreement further states that it is "governed by the [FAA]" and that the employee and Wanrong "acknowledge and agree that the FAIR Program evidences a transaction involving interstate commerce." Dkt. No. 12-2 at 6 (quotations in original). The FAIR Agreement further states that:

> **Can A Claim Be Resolved in Court? No.** Under the FAIR Program, You and the Company each waive Your respective rights to have a Claim decided in court, by a judge, jury and, where permitted by law, an administrative agency. **Instead, You and the Company hereby agree that the internal dispute resolution and arbitration procedures set forth below are the sole and exclusive methods for resolving any and all Claims.**

*See* Dkt. No. 12-2 at ¶ 5 (emphasis in original); *see also* Dkt. No. 21-3 at 8; Dkt. No. 21-2 at 8 (in Spanish). Finally, in bold, the FAIR Agreement notes that: "**By signing below, You confirm that You have read and understand the terms and conditions of the FAIR Program, which require You to submit all Claims to binding arbitration on an individual basis**." *Id.* at 7 (emphasis in original).

Defendants represent that one of the documents in Plaintiff's personnel file is Plaintiff's signed agreement entitled, "Acuerdo En Respecto Al Encuentro De Hechos Y Resolutión De Problemas ('FAIR') Programa Y Arbitraje," which is the FAIR Agreement translated into Spanish. Dkt. No. 21-2 at 3-12 (featuring the signature on page 12). Defendants provide the Court with a forensic document examiner report concluding that the signature on the signature on the FAIR Agreement is consistent with other signatures by the Plaintiff. *See* Dkt. No. 21-4.

Plaintiff contests the legitimacy of the signed FAIR Agreement and claims that he has never been presented with an arbitration agreement and that his signature was forged. Dkt. No. 22-6 at 6.

B. **Procedural History**

Plaintiff,[5] then-proceeding *pro se*, filed this action on January 14, 2025 alleging violations of the FLSA, 29 U.S.C. § 206 and NYLL. *See generally* Dkt. No. 5. The Summons with Notice was served on Defendants on March 1, 2025. Dkt. 1 at 2. Pursuant to 28 U.S.C. § 1446, Defendants filed a timely Notice of Removal on March 21, 2025. *Id.* On April 3, 2025, Plaintiff filed his Complaint, supplemental exhibits, and a demand for a jury trial with this Court. *See* Dkt. Nos. 5 and 6.

On May 8, 2025, Defendants requested a pre-motion conference because they intended to file a motion under Fed. R. Civ. P. 12(b)(3) to stay the action and compel arbitration. *See* Dkt. No. 12. Within this request, Defendants stated that on November 30, 2021, Plaintiff executed a mandatory arbitration agreement, the FAIR Agreement, upon commencing his employment with Tai He, an affiliate of Wanrong. *Id.* at 1. Under the FAIR Agreement, Plaintiff agreed to submit all claims arising from his employment to binding arbitration on an individual basis. *Id.* at 1; *see generally* Dkt. Nos. 12-1 and 12-2. Defendants further claim that they made Plaintiff's counsel aware of this binding arbitration agreement via email on April 29, 2025, but Plaintiff's counsel had not answered as of May 8, 2025, when Defendant's counsel drafted this letter to the Court. Dkt. No. 12 at 2. In addition to Defendants' request for a pre-motion conference, Defendants included the FAIR Agreement translated into Spanish and signed by Plaintiff. Dkt. No. 12-1. On May 9, 2025, Defendants' request for a pre-motion conference and any resulting motion to compel were referred to the undersigned. *See* Text Order dated May 9, 2025.

---

[5] The docket erroneously lists Plaintiff Jose Enrique Ceron Diaz twice: first proceeding *pro se* and represented by counsel, John Troy; and second represented by counsels Aaron Schweitzer, Tiffany Troy, and John Troy. Plaintiff is, in fact, no longer proceeding *pro se* and is represented by counsels John Troy, Aaron Schweitzer, and Tiffany Troy of Troy Law, PLLC. The Clerk is directed to update the docket accordingly.

6

On May 11, 2025, Plaintiff filed a response in opposition to Defendants' request for a pre-motion conference. *See* Dkt. No. 14. Plaintiff denied executing the FAIR Agreement stating he did not sign the FAIR Agreement and that his signature was forged. Dkt. No. 14 at 2. Additionally, Plaintiff claims he and four other coworkers never signed the FAIR Agreement, were never presented with the FAIR Agreement, and their signatures were forged, as evidence by some of their names being misspelled. *Id.* at 3. Plaintiff also alleges that, while Defendants claim they retained a forensic document examiner, they never disclosed the identity of the document examiner. *Id.* at 2.

On May 15, 2025, Plaintiff's current counsel filed their notices of appearance. *See* Dkt. Nos. 16 and 17. Upon review of the submissions, this Court adjourned the pre-motion conference request *sine die*, and Defendants and Plaintiff were instructed to file their motion to compel arbitration and opposition to the motion, respectively. *See* Text Order dated May 16, 2025. Defendants requested and were granted an extension of time to serve their motion to compel arbitration because the New York State Supreme Court, Queens County, issued a decision and order in *Brinez* relating to Defendants' pending motion to stay the action and compel arbitration in the instant case. Dkt. Nos. 20 at 1; 20-1 at 3-5. In short, New York State Supreme Court Justice Denise N. Johnson found that the FAIR Agreement, at issue in both this instant matter and *Brinez*, is enforceable against Plaintiff. *Id.* Defendants argue the *Brinez* decision and order estops Plaintiff from contesting the signature on the signed FAIR Agreement under the doctrine of collateral estoppel. *Id.* Defendants filed their motion to Stay the Action and Compel Arbitration on July 31, 2025. Dkt. No. 21. In addition to their motion, Defendants filed declarations from two Wanrong employees containing the FAIR Agreement in both English and in Spanish, signed by Plaintiff (Dkt. Nos. 21-2 and 21-3), an Expert Report by Mr. Jeffrey H. Luber, the Forensic Document

7

Examiner (Dkt. No. 21-4), and their memorandum of law in support of their motion (Dkt. No. 21-5).

On July 31, 2025, Plaintiff filed his opposition to Defendants' motion to compel arbitration and stay the action. Dkt. No. 22. Plaintiff filed affidavits by Plaintiffs Diaz (Dkt. No. 22-1), Brinez (Dkt. No. 22-2), Basurto (Dkt. No. 22-3), Neira (Dkt. No. 22-4), and Galvez (Dkt. No. 22-5) with side-by-side comparisons of their handwritten signatures (Dkt. Nos. 22-1 at 17; 22-2 at 17; 22-3 at 17; 22-4 at 17; 22-5 at 17) and all stating they never signed the FAIR Agreement (Dkt Nos. 22-1 at 1; 22-2 at 1; 22-3 at 1; 22-4 at 1; 22-5 at 1). Additionally, in Plaintiff's memorandum of law in opposition to Defendants' motion to compel, Plaintiff claims that: (1) the FAIR Agreement is void and unenforceable because the Plaintiff's signature was forged; and (2) the FAIR Agreement did not encompass of Plaintiff's claims. Dkt. No. 22-6 at 6-9.

Defendant then filed a reply memorandum of law in response to Plaintiff's opposition to the motion to compel arbitration. *See* Dkt. No. 23. Defendants argue in their reply that collateral estoppel precludes Plaintiff from challenging the authenticity of his signature and that all Plaintiff's claims fall within the scope of the FAIR Agreement. Dkt. No. 23 at 6-12. In response, Plaintiff filed a sur-reply—without seeking leave of the Court—asserting that collateral estoppel does not apply where the issue being addressed by the court is currently being appealed. Dkt. No. 24 at 7. In an abundance of caution, all of these documents have been reviewed and considered.

## II. **Standard of Review**

The FAA provides when a court shall compel arbitration and stay all proceedings before it:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement, shall

> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Federal Arbitration Act, 9 U.S.C. § 3. The FAA provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The FAA thus reflects a "federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted); *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (noting that the FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution.") (internal quotation marks and citations omitted).

"In deciding whether to compel arbitration, a court must first decide whether the parties agreed to arbitrate." *Daitz*, 2025 WL 2733346, at *2 (quoting *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022)). "To determine whether to compel arbitration, courts perform a two-step inquiry that looks at contract principles 'governed by state rather than federal law.'" *Ross v. Finzer & Atallah*, No. 25-CV-1179 (DEH) (VF), 2025 WL 2860070, at *2-3 (S.D.N.Y. Oct. 8, 2025) (quoting *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003) (*per curiam*)). "At step one, the court considers whether the parties enter[ed] into a contractually valid arbitration agreement." *Ross*, 2025 WL 2860070, at *2-3 (citations omitted). "At step two, the court first asks, whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." *Id.* "[I]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*, No. 22-CV-5212 (JPC) (JEW), 2023 WL 2138693, at *2 (S.D.N.Y. Feb. 21, 2023) (quoting *Henry Schein, Inc. v. Archer & White Sales,*

9

*Inc.*, 586 U.S. 63, 69 (2019)) (alteration in original, internal quotation marks omitted). "If it does not, then the court considers whether 'the parties' dispute fall[s] within the scope of the arbitration agreement.'" *Ross*, 2025 WL 2860070, at *2-3 (quoting *Cap Gemini Ernst & Young, U.S., LLC*, 346 F.3d at 365).

"If a court concludes that the parties agreed to arbitrate, it must then determine '(1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration.'" *Daitz*, 2025 WL 2733346, at *2 (quoting *Zachman*, 49 F.4th at 101).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Ross*, 2025 WL 2860070, at *2-3 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "To show 'clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator,' parties may point to provisions of an arbitration agreement 'explicitly incorporat[ing] procedural rules that empower an arbitrator to decide issues of arbitrability.'" *Ross*, 2025 WL 2860070, at *2-3 (quoting *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021) (internal quotation marks and citations omitted)).

After the two-step inquiry, the Court examines whether 'one party to the agreement has failed, neglected or refused to arbitrate.'" *Ross*, 2025 WL 2860070, at *2-3 (quoting *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (internal quotation marks and citations omitted)).

Motions to compel arbitration are adjudicated under a framework similar to the summary judgment standard. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Hines v.*

10

*Overstock.com, Inc.*, 380 Fed. Appx. 22, 24 (2d Cir. 2010); *Faggiano v. CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 36 (E.D.N.Y. 2017). "[T]he court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 365 (S.D.N.Y. 2022), *aff'd*, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (citations omitted).

As noted above, the court must "consider all relevant admissible evidence" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016); *see Daitz*, 2025 WL 2733346 at *3. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4). If, however, the arbitrability of the dispute can be decided as a matter of law based on the undisputed facts in the record, the court "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (quoting *Bensadoun*, 316 F.3d at 175).

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *GPS Int'l Techs., Inc. v. Verizon Commc'ns, Inc.*, No. 24-CV-7758 (ALC), 2025 WL 2776095, at *3 (S.D.N.Y. Sept. 30, 2025) (quoting *Zachman*, 49 F.4th at 101-02). The burden then "shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). The non-moving party may not satisfy this burden through "general denials of the facts on which the right to arbitration depends." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). Instead, the party opposing arbitration "must submit evidentiary facts showing

11

that there is a dispute of fact to be tried." *Id.* "A party has refused to arbitrate if it commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *Smith v. Meta Platforms, Inc.*, No. 24-CV-4633 (JPC), 2025 WL 2782484, at *4 (quoting *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (cleaned up)).

"In accordance with the 'strong federal policy favoring arbitration as an alternative means of dispute resolution,' [courts] resolve any doubts concerning the scope of arbitrable issues 'in favor of arbitrability.'" *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (citing *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996)).

### III.  Discussion

#### A.  Arbitration

Defendants contend that the FAA mandates arbitration of Plaintiff's claim because: (i) the parties executed a valid arbitration agreement; and (ii) Plaintiff's claim against Wanrong and Tai He falls within the scope of such arbitration agreement. Dkt. No. 23 at 6-12. As outlined below, the Court agrees with Defendants on both issues.

##### i.  The FAIR Agreement is a Valid Arbitration Agreement

First, the Court agrees that the parties formed a valid arbitration agreement. "The threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (internal quotations and alterations omitted). The question is resolved with reference to state law. *Meyer*, 868 F.3d at 73-74; *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law.").

12

"Under New York law, [Defendants] must establish there was a meeting of the minds on all essential terms of the contract, demonstrating the parties' mutual assent and mutual intent to be bound." *Compass Prods. Int'l LLC v. Charter Commc'ns*, Inc., No. 22-254, 2023 WL 2358479, at *2 (2d Cir. Mar. 6, 2023) (citing *Schurr v. Austin Galleries of Ill., Inc.*, 719 F.2d 571, 576 (2d Cir. 1983)). A contract containing a forged signature is unenforceable because there can be no meeting of the minds. *See Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003). "[I]f a party's signature were forged on a contract, it would be absurd to require arbitration if the party attacking the contract as void failed to allege that the arbitration clause itself was fraudulently obtained." *Kyung In Lee v. Pac. Bullion (New York) Inc.*, 788 F. Supp. 155, 157 (E.D.N.Y. 1992).

"A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4." *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987). Conclusory statements or mere assertions are insufficient. *See Dassero v. Edwards*, 190 F. Supp. 2d 544, 554-55 (W.D.N.Y. 2002) (noting that a party resisting arbitration must submit evidentiary facts, such as expert testimony or other proof, to support the claim of forgery); *see also ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99; *Roofers Local No. 149 Pension Fund v. Amgen Inc.*, 751 F. Supp. 3d 330, 345.

Here, the Court finds that the parties entered into a contractually-valid arbitration agreement. Defendants filed a copy of the FAIR Agreement bearing Plaintiff's signature on the docket in this action. *See* Dkt. No. 21-2 at 12. Defendants also provided a report from a forensic document examiner who concluded that Plaintiff's verified signatures matched the signature on the signed FAIR Agreement. *See* Dkt. No. 21-4 at 18, 20-25. In the instant case, Defendants'

13

forensic scientist, Jeffrey H. Luber,[6] based his forensic examination on visual and microscopic examinations of the signature written on the FAIR Agreement and compared it to known samples of Plaintiff's signature, including Plaintiff's New York State Form LS 54S, three weekly time sheets, and two weekly lunch fees. *Id.* at 4-5; Dkt. No. 21-5 at 7. As part of Mr. Luber's handwriting comparisons, he examined "features of handwriting habit patterns, including but not limited to: fluency of writing, letter construction, height relationships between letters, letter proportions, connecting strokes, slant, speed of writing, beginning and ending strokes and baseline orientation." Dkt. No. 21-4 at 5. Based on his forensic examination, Mr. Luber determined that Plaintiff signed his name on the FAIR Agreement document. *See Id.* at 6.

### 1. Plaintiff's Forgery Claim

Following Defendants' submission, Plaintiff disputes that he entered into a valid arbitration agreement with Defendants; instead, he alleges that his signature was forged. Dkt. No. 22-6 at 6-9. As stated above, Plaintiff filed affidavits by Plaintiffs Diaz (Dkt. No. 22-1), Brinez (Dkt. No. 22-2), Basurto (Dkt. No. 22-3), Neira (Dkt. No. 22-4), and Galvez (Dkt. No. 22-5) with side-by-side comparisons of their handwritten signatures (Dkt. Nos. 22-1 at 17; 22-2 at 17; 22-3 at 17; 22-4 at 17; 22-5 at 17) and all stating they never signed the FAIR Agreement (Dkt Nos. 22-1 at 1; 22-2 at 1; 22-3 at 1; 22-4 at 1; 22-5 at 1).

While a party is not required to submit forensic document examiner reports,[7] the party claiming forgery has the burden of rebutting the presumption of authenticity of signatures. *See*

---

[6] Mr. Luber is a Diplomate of the American Board of Forensic Document Examiners. *Id.* at 3. Mr. Luber has been a forensic document examiner for over forty years and has consulted on both public and private cases. *Id.*

[7] Under Rule 901(a) of the Federal Rules of Evidence, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "[T]he standard for authentication. . . .is one of reasonable

14

N.Y. C.P.L.R. 4540-a; U.C.C. § 3-308; *see Duran v. Taco Bell of America, LLC,* No. 24-CV-8193 (FB) (MMH), 2025 WL 2711521, at *1 (E.D.N.Y. Sept. 23, 2025) ("If the opposing party challenges the validity of the signature, the moving party must establish its authenticity by a preponderance of the evidence.") (internal citation omitted); *In re Broadway Equity Holdings, LLC*, 617 B.R. 777, 789 n.41 (S.D.N.Y. May 12, 2020) ("It is incumbent upon a party claiming the non-genuineness of a signature [on a negotiable instrument] to produce firsthand proof of the forgery.") (internal citation omitted); *Dye v. Kopiec*, No. 16-CV-2952 (LGS), 2016 WL 7351810, at *3 (S.D.N.Y. Dec. 16, 2016) ("It is incumbent upon a party claiming the nongenuineness of a signature to produce firsthand proof of the forgery.") (internal citation omitted).

Here, Plaintiff did not file any reports by handwriting examiners in support of his assertion that his signature on the FAIR Agreement was forged. Plaintiff instead relies on the affidavits and side-by-side comparisons which only compare the FAIR Agreement signatures to one sample signature for each Plaintiff. *See* Dkt. Nos. 22-1 at 17; 22-2 at 17; 22-3 at 17; 22-4 at 17; 22-5 at 17. Plaintiff's memorandum in opposition to Defendants' motion relies on *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 366 (2d Cir. 2003) to substantiate his claim that a forged arbitration agreement is void *ab initio*. *See* Dkt. No. 22-6 at 13. In *Opal*, however, the party claiming forgery, retained a handwriting examiner who rendered his expert opinion regarding the authenticity of the signature; whereas, here, Defendants submitted a report from a forensic scientist who determined that Plaintiff signed his name on the FAIR Agreement, and Plaintiff submitted no such report. *See id.* at 366. Therefore, Plaintiff's forgery claim must be rejected.

---

likelihood." *457 Realty Corp. v. Chamois Properties, Inc.*, No. 18-CV-4996 (DRH) (SIL), 2019 WL 13236157, at *5 (E.D.N.Y. June 19, 2019).

## 2. Plaintiff's Forgery Claim is Barred by Collateral Estoppel

Collateral estoppel provides an independent reason to bar Plaintiff's forgery claim. Notably, Plaintiff advances the same forgery argument and the same affidavits in the instant case as *Brinez*. Dkt. Nos. 22-6 at 7 (acknowledging that since "the arguments that Defendants raised are substantively the same as the arguments they raised in [the State Court Action (*Brinez*)], Plaintiff Ceron Diaz supports this Memorandum of Law with his previous affidavit together with the affidavits of his coworkers Mauricio Alberto Brinez, Efren Vargas Basurto, Luis Manuel Espinoza Neira, Natalio Crispin Galvez") (capitalization altered); 23 at 6. As a result, the forgery claims are barred by the doctrine of collateral estoppel. The doctrine of collateral estoppel applies where:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Geller v. Hochul*, No. 21-CV-2514, 2023 WL 221725, at *1 (2d Cir. Jan. 18, 2023) (affirming district court's application of collateral estoppel). Here, the requirements of collateral estoppel are satisfied.

First, Plaintiff advances the same claim that the signature of the FAIR agreement was forged in both the *Brinez* action and the instant matter. *Brinez* Dkt. No. 118 at 8-12; Dkt. No. 22-6 at 10-14. Second, the authenticity of Plaintiff's signature was litigated in *Brinez*, as evidenced by Justice Johnson's opinion. Dkt. No. 23-2 at 4. Third, the parties had a full and fair opportunity to litigate the issue before a New York State Court, as evidenced by *Brinez*. Lastly, the resolution of the issue was necessary to support a valid and final judgment on the merits because, in granting Defendants' motion to compel arbitration in the *Brinez*, the authenticity of Plaintiff's signature was necessarily determined.

16

In her opinion, Justice Johnson concluded that Plaintiff's "bare, unsubstantiated assertions of forgery in [his] respective affidavits are insufficient to raise a triable issue of fact[.]" Dkt. No. 23-2 at 4; *see also Oppenheimer*, 56 F.3d at 358 (holding that the non-moving party may not satisfy the burden of demonstrating that an agreement to arbitrate was made through "general denials of the facts on which the right to arbitration depends")

In sum, the Court finds that Defendants have satisfied their burden to show that Plaintiff indeed agreed to be bound by the FAIR Agreement.

### ii.   Plaintiff's Claims are within the Scope of the FAIR Agreement

Second, Plaintiff's claim appears to fall squarely within the scope of the FAIR Agreement. The FAIR Agreement specifically identifies claims under the FLSA and the NYLL in its non-exhaustive list of covered statutory claims. *See* Dkt. Nos. 21-5 at 13; 21-3 at 7. Here, Plaintiff alleges violations of both the FLSA and the NYLL. *See* Dkt. No. 5 ¶ 1. Specifically, Plaintiff alleges that Defendants willfully and intentionally failed to pay him his minimum wage and overtime hours, and that Defendants did not record Plaintiff's work hours. *Id* ¶¶ 2-3. Simply put, the FAIR Agreement appears to cover the unpaid wage claims enshrined in Plaintiff's Complaint. Consistent with *Daitz*, FLSA and NYLL claims are also ripe for arbitration because they are not the type of federal statutory claims Congress intended to be non-arbitrable. *Daitz*, 2025 WL 2733346, at *2. "[I]t has been found that individual agreements to arbitrate FLSA claims are enforceable." *See Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 539 (E.D.N.Y. 2016). Here, the FAIR Agreement states that all valid Claims, which includes FLSA and NYLL claims, must be arbitrated individually subject to the arbitration agreement. *See* Dkt. No. 21-3 at 9. Therefore, Plaintiff's claims are within the scope of the FAIR Agreement.

Accordingly, the Court grants Defendants' motion to compel arbitration. *See Forbes v. A.G. Edwards & Sons, Inc.,* No. 08-CV-552 (TPG) at *3 (S.D.N.Y. Feb. 18, 2009) ("When a district court determines that the issue before it is referrable to arbitration pursuant to an arbitration agreement, the FAA 'leaves no place for the exercise of discretion,' but instead, mandates that the court 'direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## B.    Stay of the Action

Having concluded that the FAIR Agreement is enforceable and that Plaintiff's claims fall within its broad scope, the Court must decide whether stay the action.

When all claims have been referred to arbitration and a stay is requested, the Court *must* grant the stay. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (holding that "the text, structure, and underlying policy of the FAA *mandate* a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.") (emphasis added); *see also Daitz*, 2025 WL 2733346, at *4 (quoting *Katz*, 794 F.3d at 343-346); *Goldeneye Advisors, LLC v. Hanaco Venture Capital, Ltd.*, No. 24-C-9918 (VSB) (VF), 2025 WL 2434643, at *5 (S.D.N.Y. Aug. 25, 2025) (quoting *Katz*, 794 F.3d at 347); *Diaz v. Avo Shopping Company, Inc.*, 22-CV-2591 (ENV) (TAM), 2024 WL 5416155, at *4 n.4 (E.D.N.Y. Aug. 15, 2024) (same); *Shenzhen Xingchen Xuanyuan Industrial Co. Ltd. v. Amazon.com Services LLC*, 735 F. Supp. 3d 453, 464 (S.D.N.Y. 2024) (same).

The Court notes that, following *Katz*, courts in this Circuit "generally [] stay the proceedings pending arbitration, rather than dismiss the case." *Osorio v. CVS Pharmacy*, No. 22-CV-6575L, 2023 WL 3093872, at *1 (W.D.N.Y. Apr. 26, 2023) (citing *Katz*, 794 F.3d at 347); *see, e.g.*, *TIG Ins. Co. v. Am. Home Assurance Co.*, No. 18-CV-10183 (VSB), 2020 WL 605974,

18

at *4 (S.D.N.Y. Feb. 7, 2020) (same); *Porcelli v. JetSmarter, Inc.*, No. 19-CV-2537 (PAE), 2019 WL 2371896, at *4 (S.D.N.Y. June 5, 2019); *Crawley v. Macy's Retail Holdings, Inc.*, No. 15-CV-2228 (KPF), 2017 WL 2297018, at *6 (S.D.N.Y. May 25, 2017); *see also Mancilla*, WL 4432122, at *10. The Court therefore does not make any *sua sponte* report and recommendation regarding dismissal at this time.

Accordingly, the Court grants Defendants' request for a stay and stays this case pending arbitration. *See GPS Int'l Techs., Inc.*, 2025 WL 2776095, at *8.

**IV.    <u>Conclusion</u>**

Accordingly, Defendants' motion to compel arbitration is granted and the case is stayed pending the outcome of arbitration. *See* 9 U.S.C. § 3 (mandating that a court "*shall* on application of one of the parties stay the [case] until such arbitration has been had" if the court is satisfied that the issue involved in the suit is referrable to arbitration) (emphasis added). The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 21 and to stay this case.

Dated:    Brooklyn, New York
    November 7, 2025                        **SO ORDERED.**

                                    */s/ Joseph A. Marutollo*
                                    JOSEPH A. MARUTOLLO
                                    United States Magistrate Judge